Green, J.
delivered the opinion of the court.
This bill is filed by Sharp, alleging that ajudgment had been recovered against himself and the defendants, as joint securities for James G. Whitney, deceased, for $2,200, of which amount complainant had paid $1,200, and the defendants the remainder; and complainant prays for a decree against the defendants, as his co-securities, for contribution.
The defendants resist this decree, alleging that the amount paid by complainant was raised from funds placed in his hands by Whitney in his lifetime, or out of monies belonging to Whitney’s estate that had come to his hands since Whitney’s death.
To sustain this defence, Caldwell and Hunter filed their cross-bill, from which, together with Sharp’s answer and the proof, the following facts appear: A short time before his death, James G. Whitney purchased a stock of goods in the eastern cities, and brought them to Bedford county, his residence. Being in debt, he did not open the goods, but secreted a portion of them in Bedford, and removed the remainder to Nashville, and pretended to have sold the whole stock to one Joel W. Rivers of Arkansas, who sold the goods that were left in Bed-ford, at the house of Sharp, to Hickerson, Bell & Co., of Manchester, taking from them to secure the payment, one note for $2000 and another for $785. Shortly after these transactions Whitney died, and Rivers delivered up to Mrs. Whitney the two notes on Bell and Hickerman as the property of Whitney, *416 telling Scudder, the witness, that the sale of the goods to him by Whitney was “a mere sham,” and that the notes, in fact, belonged to Whitney’s estate. Mrs. Whitney having obtained possession of the notes, placed them in the hands of Sharp, who retained them a short time; but afterwards gave them up to Rivers to whom they were payable. Rivers then transferred to Sharp the $785 note, to pay certain debts due from Whitney’s estate, for which Sharp was bound as surety. Sharp has collected said money from Bell, Hickerson & Co.
One Charles D. Steele has taken out letters of administration on the estate of James G. Whitney, deceased, and has filed his bill against Sharp and others, to recover the effects in their hands belonging to said estate; which bill has been heard in the Chancery Court, and a decree has been made against .Sharp for the money so received by him on said note.
The complainants in- the cross bill, Caldwell and Hunter, contend that the administrator of Whitney is not entitled to recover the effects which his intestate fraudulently placed in the hands of Rivers, and which have since come into the hands of Sharp and others.
It is unquestionably the settled doctrine of this court, that as a fraudulent vendor cannot set aside the conveyance by his bill, so neither can his personal representative be heard to impeach such conveyance for fraud. Moody vs. Frey, Hump. R. 567. If, therefore, Rivers had claimed these notes for which the goods were sold, as being his property, and had insisted on his right to the proceeds by virtue of the pretended sale of the goods to him, the administrator of Whitney would have been repelled from a Court of Chancery, had he come by his bill to set aside that sale as fraudulent, and to obtain these effects as assets of the estate of Whitney. But the facts do not present that case. After the death of Whitney, Rivers set up no claim to these notes. He said the sale was a sham, and that the notes belonged to Whitney’s estate, and he delivered them up to be applied in payment of Whitney’s debts. Although it be true, that a fraudulent vendor cannot be heard to impeach such sale, — yet if the fraudulent vendee relinquish all claim to the property, the subject of the fraudulent contract, and declare that *417 it belongs to the vendor, and not to him, there is nothing in the way of the vendor’s title. In setting up a claim to the property, it is not necessary that he should bring the fraudulent contract into question; for as the fraudulent vendor abandons all claim under the contract, there is nothing to resist the claim of the rightful owner. Certainly a stranger to that contract, who may have possessed himself of the property, cannot resist the owner’s title, on the ground that such property had once been the subject of a fraudulent contract. No one can set up such defence, but the fraudulent vendee, and those who are purchasers from him. In the case before us, Sharp did not receive the note as the property of Rivers, but as the property of Whitney. He was to apply it to the payment of Whitney’s debts, for which he was liable. No consideration passed between him and Rivers, and Rivers treated it as Whitney’s property by delivering it to Sharp, to pay the debts to Whitney.
We think, therefore, that. Sharp could not resist the claim of the administrator, and that the chancellor was correct in decreeing against him.
2d. But if Sharp, by reason of his possession of this note, should be regarded as executor de son tort, we think this cross-bill is not the proper method for reaching the fund. An executor de so7i tort, cannot retain for his own debt, but he is liable to creditors, or to the rightful administrator, for the entire funds in his hands. A bill in Chancery does not lie to recover from an executor de son tort a debt, unless the bill be filed in behalf of all the creditors for a pro rata distribution of the funds in the hands of such executor. But such is not the frame of this bill. The cross bill states a proper ground of defence to the original bill, in the allegation that Sharp had been indemnified by the reception from Whitney, in his lifetime of effects to the amount of debts he had paid. If that statement had been true, he could have had no claim on his co-securities, having been indemnified by their principal. But the reception of Whitney’s effects after his death, could be no indemnity, for he could not retain for his debts. The whole fund might be taken out of his hands by creditors, or by the rightful administrator. There is, therefore, no connection between Sharp’s *418 claim to contribution in this case, and the fact that he is executor de son, tort. For the establishment of the fact that he is executor de son tort, furnishes no equitable ground to repel his claim for contribution; because the funds that constitute him such executor, cannot be applied to his indemnity.